IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 1:06-CR-396-TCB-3 |
| OLIVAR MARTINEZ-BLANCO | : | |
| | : | CIVIL ACTION |
| | : | |
| | : | NO. 1:11-CV-540-TCB |

GOVERNMENT'S OPPOSITION TO
TO DEFENDANT'S 28 U.S.C. § 2255 MOTION
TO VACATE, SET ASIDE, OR CORRECT SENTENCE

COMES NOW, the United States of America, by and through its counsel, Sally Quillian Yates, United States Attorney, and Suzette A. Smikle, Assistant United States Attorney for the Northern District of Georgia, and files this Opposition to Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence and respectfully requests that Defendant's Motion be denied. (Docs 145; 145-1.)

I.   PROCEDURAL HISTORY

On September 19, 2006, a grand jury sitting in the Northern District of Georgia returned an indictment that charged Defendant with the following:

(1)   Conspiracy to possess with intent to distribute at least five (5) kilograms of a mixture containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21 U.S.C. §§ 841(b)(1)(A)(ii) and 846

(Count One);

(2)    attempt to distribute at least five (5) kilograms of a
       mixture containing a detectable amount of cocaine, a
       Schedule II controlled substance, in violation of Title
       21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii) and 846 and
       Title 18 U.S.C. § 2 (Count Two);

(3)    possession with intent to distribute at least five-
       hundred (500) grams of a mixture containing a detectable
       amount of methamphetamine, a Schedule II controlled
       substance, in violation of Title 21 U.S.C. §§ 841(a)(1)
       and 841(b)(1)(A)(viii) and Title 18 U.S.C. § 2 (Count
       Four);

(4)    possession with intent to distribute at least one-hundred
       (100) kilograms of a mixture containing a detectable
       amount of marijuana, a Schedule I controlled substance,
       in violation of Title 21 U.S.C. §§ 841(a)(1) and
       841(a)(1)(B)(vii) and Title 18 U.S.C. § 2 (Count Five).

(Doc. 1.)

On September 19, 2008, a jury found Defendant guilty on Counts
One and Two. (Doc 107.)   Defendant was acquitted on the two
remaining counts, which were Counts Four and Five.  On December 3,
2008, the Court sentenced Defendant to a mandatory minimum term of
life imprisonment on both counts to run concurrently. (Docs 117;
118; 133.)

On December 5, 2008, Defendant filed a direct appeal of his

conviction and sentence. (Doc 119.)  Thereafter, the District Court appointed new counsel to represent Defendant on appeal.  (Doc 123.) Specifically, the Court appointed John Lovell as appellate counsel - the same attorney who filed this § 2255 motion. (Doc 123.) Defendant argued four grounds on appeal: 1) there is a conflict between the mandatory minimum sentencing provisions of 21 U.S.C. § 841(b) and the application of the 18 U.S.C. § 3553(a) sentencing factors and under the rule of lenity § 3553(a) controlled; 2) Defendant's sentence violated the Eighth Amendment because 21 U.S.C. §§ 841 and 851 allow the arbitrary and capricious application of the mandatory life penalty enhancement; 3)§§ 841 and 851 are unconstitutional because they allow an enhanced mandatory minimum sentence based on prior convictions that were neither alleged in the indictment nor found by a jury; and 4) §§ 841 and 851 violate the separation of powers principle.  United States v. Martinez-Blanco, No. 08-16879-GG (11th Cir. June 10, 2009)(Defendant's brief); Doc 145 at 3.  Upon review of the Appellant's and the Government's briefs, the Eleventh Circuit affirmed the Defendant's sentence.  United States v. Martinez-Blanco, Fed.Appx. 339, 2009 WL 3166833 (11th Cir. Oct. 5, 2009).

On February 22, 2011, Defendant timely filed the present § 2255 motion.[1] (Docs 145; 145-1.)  On March 1, 2011, the Court

---

[1] The United States Supreme Court denied cert on Defendant's appeal on February 22, 2010. Martinez-Blanco v. United States, 130 S.Ct. 1558 (2010).  Pursuant to 28 U.S.C. § 2255(f)(1), a one year period of limitation to file a § 2255 motion applies and runs from

ordered the Government to respond. (Doc 146.)  Defendant is currently incarcerated on the sentence imposed in this case.

## II.  STATEMENT OF FACTS

The essential facts of this case leading to Defendant's conviction all happened on one day - June 4, 2005. (Doc 130 at 75.) The case stemmed from a wiretap investigation concerning co-defendants Johnny Arroyo-Pineda and Victor Giles-Morales. (Id. at 69.)  Based on the evidence at trial, Arroyo-Pineda was a drug dealer, and Giles-Morales and the Defendant were lower-level participants in his organization.

In the afternoon of June 4, 2005, based on intercepted telephone calls, the Drug Enforcement Administration (DEA) had determined that an exchange of vehicles was scheduled to take place near a gas station. (Id. at 75.) The DEA knew that one of the vehicles had a compartment capable of holding contraband. (Id.) The intercepted phone calls also revealed that a deal involving drugs and/or money would occur that day. (Id. at 69.) Later in the day, co-defendant Giles-Morales was spotted driving the vehicle with the hidden compartment to 969 Rockbridge Way, a location under surveillance by the DEA and other law enforcement officers. (Id. at 80.)  Earlier, this same vehicle had been seen at 4203 Skyler Way entering into the garage where it remained for a short time. (Id. at 130-131.)

---

the date on which the judgment of conviction becomes final, that is, the date on which the cert petition was denied.

After a short time at 969 Rockbridge Way, co-defendant Giles-Morales left driving the vehicle with the hidden compartment.  The vehicle was later stopped by Georgia State Patrol. (Id. at 80-81, 113.)  After the stop, the vehicle was searched and 15 kilograms of cocaine was seized. (Id. at 117.)  DEA had set up surveillance at a nearby Burger King, where they were able to observe the stop and search of the vehicle. (Id. at 175.)

Members of the DEA surveillance team saw the Defendant and others arrive at the Burger King, go inside, take a seat, and watch the search of co-defendant Giles-Morales's vehicle. (Id. at 174-176.)  They did not order any food.  (Id.)  The Defendant arrived at the Burger King in a Harley Davidson Model Ford F-150 Pickup Truck. (Id. at 174.)

During the traffic stop of co-defendant Giles-Morales, the DEA intercepted phone calls to co-defendant Arroyo-Pineda in which the parties appeared to be discussing the very stop and search of the vehicle driven by co-defendant Giles-Morales.  One of the parties to the phone conversation said that they had someone there watching the stop. (Id. at 82.)

Later that day, law enforcement officers observed Defendant leave the Burger King in the F-150 truck and proceed to 4203 Skyler Way. (Id. at 185.)  Upon arrival at the house on Skyler Way, Defendant opened the front door and entered the residence without knocking. (Id. at 186-187.)  Law enforcement officers observed two other individuals arrive at the Skyler Way residence in a Ford

Escort and drive it into the garage - the same garage from which co-defendant Giles-Morales drove the vehicle from which 15 kilograms of cocaine had been seized. (Id. at 185.)  After a short while, the Defendant exited the house and appeared to exchange some items with the individuals who had driven the Ford Escort. (Id. at 188.)  Then Defendant got into the Ford Escort, instead of the F-150 truck he arrived in, and drove away. (Id.)  After driving a short distance, Defendant was stopped by a Georgia State Patrol Officer. (Id. at 118.)  Instead of complying with the officer's commands, Defendant abandoned the Ford Escort and fled. (Id. at 119-120.)  Defendant was apprehended shortly thereafter. (Id. at 122.)

A subsequent search of the vehicle in which Defendant had been stopped revealed that it contained almost one million dollars. (Id. at 120, 143-144.)  A search of a cellular telephone also found in Defendant's vehicle showed a call between that phone and the phone of co-defendant Giles-Morales on June 2, 2005. (Id. at 104.)  In addition, a cellular telephone seized from co-defendant Giles-Morales had the Defendant's number stored in it under "Olivar," which is the Defendant's first name. (Id.)

The house at 3204 Skyler Way was also searched on June 4, 2005, and law enforcement officers found, among other things, 930 pounds of marijuana, two kilograms of cocaine, and at least sixteen pounds of methamphetamine.(Id. at 85, 148, 151, 154, 157.)  The house also had a strong odor of marijuana. (Id. at 146.)

III. <u>ARGUMENT AND AUTHORITY</u>

**A. Summary of Defendant's Claims**

Defendant's 28 U.S.C. § 2255 motion alleges five claims, which all assert ineffective assistance of counsel: (1) his attorney induced him to decline a plea offer (Doc 145-1 at 9-13); (2) his attorney failed to challenge the testimony of the government's expert witness (<u>Id.</u> at 14-15); (3) his attorney asked an open-ended question on cross-examination of a government witness (<u>Id.</u> at 15-16); (4) his attorney failed to request that a juror be questioned regarding his/her knowledge of the Defendant (<u>Id.</u> at 17); and (5) his attorney failed to move to suppress evidence seized during the search of Defendant's vehicle (<u>Id.</u> at 17-19.)

**B.   Standard of Review**

Ordinarily, if a challenge to a conviction or a sentence is not made on direct appeal, it is procedurally barred in a later 28 U.S.C. § 2255 challenge. <u>Mills v. United States</u>, 36 F.3d 1052, 1055 (11th Cir. 1994). A defendant, however, may overcome this procedural default by showing both cause for his default as well as demonstrating actual prejudice suffered as a result of the alleged error. <u>Black v. United States</u>, 373 F.3d 1140, 1142 (11th Cir. 2004). Such a procedural bar does not apply to claims of ineffective assistance of counsel because the Supreme Court has held that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the

petitioner could have raised the claim on direct appeal." <u>Massaro</u> <u>v. United States</u>, 538 U.S. 500, 504, 123 S.Ct. 1690, 1694 (2003).

In order to prevail on a claim of ineffective assistance of counsel, a defendant must prove both incompetence and prejudice. <u>Chandler v. United States</u>, 218 F.3d 1305, 1312 (11th Cir. 2000), <u>cert.</u> <u>denied</u>, 531 U.S. 1204 (2001); <u>see also</u> <u>Strickland v.</u> <u>Washington,</u> 466 U.S. 668 (1984). Specifically, defendant must prove that "(1)...counsel's representation fell below an objective standard of reasonableness, and (2)...there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Chandler</u>, 218 F.3d at 1312-13 (citations omitted).

The defendant bears the burden of proving by a preponderance of competent evidence that the attorney's performance was unreasonable. <u>Id.</u> at 1313. The standard for evaluating counsel's performance is reasonableness under prevailing professional norms. <u>Id.</u> at 1413 (citing <u>Strickland</u>). To prove ineffectiveness, a petitioner must show that his attorney's representation fell outside the wide range of professionally competent assistance. <u>Id.</u> at 1314.

When evaluating an attorney's performance, the Court must be highly deferential. <u>Chandler</u>, 218 F.3d at 1314. The Court "must avoid second-guessing counsel's performance." <u>Id.</u> Instead, the Court must "indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant

decisions in the exercise of reasonable professional judgment."
Id. (internal quotation marks omitted) (alteration in original)
(quoting Strickland).    Thus, "counsel cannot be adjudged
incompetent for performing in a particular way in a case, as long
as the approach taken 'might be considered sound trial strategy.'
" Id. (quoting Darden v. Wainwright, 477 U.S. 168 (1986)).
"[B]ecause counsel's conduct is presumed reasonable, for a
petitioner to show that the conduct was unreasonable, a petitioner
must establish that no competent counsel would have taken the
action that his counsel did take." Id. at 1315.   Moreover, when
reviewing counsel's performance, the Court "must evaluate the
reasonableness of counsel's performance from counsel's perspective
at the time." Id. at 1316.   "The reasonableness of a counsel's
performance is an objective inquiry." Id. at 1315.

The Court need not "address both components of the inquiry if
the defendant makes an insufficient showing on one." Strickland at
697, 104 S.Ct. at 2069.

> **C.   Defendant's First Claim that Counsel was
> Ineffective because She Underestimated the
> Strength of Government's Case and Induced
> Defendant to Decline a Plea Offer is Rebutted
> by Defendant's Own Trial Testimony**

In his first claim, Defendant asserts that his counsel was
ineffective because she failed to review discovery with him and,
therefore, failed to accurately convey the strength of the
Government's case. (Doc 145-1 at 9-10.)   Defendant argues that if

9

his counsel had properly reviewed the discovery with him and adequately explained the strength of the government's case against him, he would have accepted a plea offer that would have exposed him to a much lower sentence. (Id. at 11.) Defendant argues that he was willing to admit his culpability at trial, but counsel did not spend adequate time with him discussing the case to realize that fact. (Id. at 13.)

If the Court were to accept Defendant's assertions as true - that counsel failed to adequately review discovery with him and did not properly convey the strength of the government's case - Defendant's claim would still fail because he is unable to show actual prejudice and satisfy the second prong of the Strickland test. The Defendant would also not have been eligible for a sentence below the mandatory minimum pursuant to the safety valve provision of 18 U.S.C. § 3553(f).

The fact that Defendant could not have entered into a plea agreement with the government is established by a review of Defendant's testimony at trial. During his sworn testimony, Defendant denied any culpability and maintained his innocence. Based on Defendant's own testimony, he denied that he was guilty of the crimes charged. Thus, Defendant would not have been able to agree to any factual basis establishing his guilt that would have been a precursor to a plea agreement. Additionally, his lack of candor, among other things, would have eliminated him from safety valve consideration.

Specifically, on September 17, 2008, Defendant asserted that
he did not aid and abet anyone to possess and distribute cocaine
and was not part of a conspiracy. (Doc 131 at 73.)  Even though the
Defendant admitted driving a car that contained almost one million
in alleged drug proceeds, he denied knowing the money was in the
vehicle or that it related to drug trafficking activity.  (Id. at
67-68.)  To explain the odd "coincidences," Defendant claimed that
he met co-defendant Arroyo-Pineda, also known as Naranjo, at a
dance about a week before June 4, 2005. (Id. at 59.)  He claimed
that they exchanged telephone numbers and spoke one time, but never
saw each other again after that meeting at the dance. (Id. at 59-
60.)

Further, Defendant claimed that he did not know co-defendant
Giles-Morales and that the cellular telephone found in the Ford
Escort, which showed a call between that phone and co-defendant
Giles-Morales's phone, belonged to the individuals who had given
Defendant the car in the garage at 4203 Skyler Way. (Id. at 60.)
With regard to the Burger King, Defendant asserted that he went
there to meet a friend to eat and did not notice the stop of co-
defendant Giles-Morales. (Id. at 62-63.)  He claimed that it was
during this meal at Burger King that his friend asked him to move
a car from the Skyler Way residence to a Walmart parking lot, but
he did not know about the large amount of money in the car or that
the house at 4203 Skyler Way was a stash house. (Id. at 63-66.)
Indeed, Defendant submitted that he ran from the police officer

when he was stopped in the Ford Escort not because he was afraid to be caught with drug proceeds, but because he feared immigration consequences as he was in the United States illegally. (<u>Id.</u> at 66.) Thus, based on the Defendant's sworn trial testimony, he could not have admitted that he was guilty of any of the crimes alleged in the indictment.  To him, he was simply in the wrong place at the wrong time.  Accordingly, as noted above, he could not have agreed to any factual basis affirming his guilt, which would have been a requirement for him to either enter a plea agreement with the government or to enter a guilty plea.

The district court in <u>Jackson v. United States</u>, 248 F.Supp.2d 652 (E.D.Mich. 2003), addressed a similar argument in a § 2255 motion of a petitioner convicted of conspiracy to distribute cocaine, making false statements, and money laundering.  In <u>Jackson</u>, the petitioner argued that he received ineffective assistance because his counsel failed to inform him of a plea offer from the government. <u>Id.</u> at 655.  He claimed that had he known the offer existed, he would have accepted it and faced a lower sentenced. <u>Id.</u>  The court rejected this argument and noted that the petitioner testified at trial and professed his innocence.  <u>Id.</u> at 656-657.  The court specifically noted that the petitioner would not have been able to provide a factual basis for his guilt, which would have been required for a guilty plea.  <u>Id.</u> ("Petitioner cannot have it both ways.  He cannot tell the jury under oath that he is innocent and claim now that he would have told the court

under oath that he was guilty.")   The Defendant in this case has put forth an almost identical argument, which must also fail based on the reasoning in <u>Jackson</u>. He cannot have it both ways.

Additionally, the Defendant cannot successfully claim that his counsel induced him to proceed to trial based on a weak government case when he had the opportunity to sit through the presentation of the entire government's case and hear the evidence for himself. After he heard all of the evidence, the Defendant could have entered a guilty plea or asked if the plea offer was still available, but instead he decided to testify on his own behalf and deny his culpability.   Thus, regardless of anything his counsel might have conveyed to him about the strength of the government's case, the Defendant was able to hear the evidence for himself and decide his own fate.   In short, the record demonstrates that the decision to fight the charges cannot now be claimed to be a result of any deficiency on the part of counsel, when the Defendant heard the evidence first hand, with the assistance of an interpreter.

Because of Defendant's testimony denying his guilt, he cannot now claim that his counsel was ineffective for failing to convince him to plead guilty.   Accordingly, he is unable to satisfy the second prong of the <u>Strickland</u> test, to wit, prejudice.   To succeed on this first claim, Defendant would have to show that his counsel's defective actions led to the receipt of the harsher sentence of life imprisonment instead of possibly 20 years.   But the record clearly shows that Defendant could not have convinced a

court to accept a guilty plea, much less negotiate a plea agreement with the government that would require dismissal of the 21 U.S.C. § 851(a) notice of sentence enhancement.[2]   As such, Defendant's first claim of ineffective assistance of counsel is contradicted by the record.

     **D.**    **Defendant's Claim that Counsel's Failure to Challenge Expert Testimony Vitiated Mere Presence Defense is Without Support as Defendant Cannot Show Incompetence and Prejudice**

Defendant next asserts that his counsel should have objected to the testimony of the government's expert witness to prevent the expert witness from testifying that Drug Trafficking Organizations (DTO) do not permit persons not involved in the DTO to enter stash house locations. (Doc 145-1 at 14-15.)   Defendant claims that by failing to object to this testimony, his counsel was ineffective because he could no longer assert his mere presence defense. (<u>Id.</u>) For the reasons below, Defendant's assertion is baseless.

Defendant cannot satisfy the first prong of the <u>Strickland</u> test because he cannot show that his counsel's assistance was defective and fell outside the wide range of professionally

---

    [2] It is important to note that Defendant has not shown in the record that any such plea offer, which included a withdrawal of the § 851(a) sentence enhancement, was on the table.   Without evidence that the government offered such a plea agreement, with no cooperation from Defendant, amounts to mere speculation and cannot be relied on as fact supporting a claim of ineffective assistance of counsel.   Nonetheless, even if such an offer existed, Defendant's trial testimony clearly shows that Defendant would not have been able to accept it.

competent assistance.  Counsel objected at various times during the witnesses's testimony. (See, e.g., Doc 131 at 21, 26 (objecting to questions about the role of trust in DTOs and objecting to the expert witness testifying to facts)).  Defendant has failed to show that other competent counsel would have objected specifically to the testimony regarding presence.  In addition, Defendant fails to show that such an objection would have been sustained, because the expert's testimony was admissible as part of his expert opinion.  Thus, Defendant has not successfully argued that an objection by his counsel would have resulted in exclusion.

And even assuming that counsel had objected and the testimony had been excluded, Defendant cannot show prejudice because there was overwhelming evidence of Defendant's guilt regardless of the expert's testimony.  The expert's testimony aided the jurors in understanding the mechanics of DTOs, but the facts themselves tied the Defendant to the crimes for which he was convicted. The Defendant's defense was therefore not "vitiated." He was free to argue whatever he wanted, then the jury was free to accept or reject it in light of the other evidence. (Doc 131 at 32.)

In United States v. Thompson, 2011 WL 98548, *3 (S.D.Ala. Jan. 11, 2011), the defendant, convicted of several cocaine and crack offenses, filed a § 2255 motion and argued that his counsel was ineffective on a number of grounds, including failing to raise certain issues in support of the motion to suppress, having a flawed trial strategy, and failing to object to improper remarks

during the government's closing argument.   The defendant in Thompson had asserted that he was prejudiced when the prosecutor stated in closing argument, "evil triumphs when good men and women do nothing." Id. at *6.   The court disagreed, however, and noted that any claim of prejudice would be frivolous in light of the defendant's overwhelming evidence of guilt. Id.   Likewise, in this case, because of the overwhelming evidence of guilt, any prejudice that may have been caused by the expert's testimony regarding presence in stash houses was inconsequential and would not have changed the result.

Defendant has simply failed to show how the failure to challenge the expert testimony during this specific area of testimony satisfies the first, much less both, of the prongs of Strickland.   Therefore, this claim should be rejected.

**E.   Defendant's Claim that Counsel was Ineffective because She asked an Open-ended Question on Cross-examination that Vitiated a Mere Presence Defense is Without Merit Based on a Review of the Record**

Similar to his claim above, Defendant next argues that his counsel's assistance was ineffective because she asked a government witness on cross-examination an open-ended question that "led to the admission of testimony that vitiated the mere presence defense." (Doc 145-1 at 15.)   Defendant asserts that counsel asked Agent Luther Bowen what evidence was available that indicated her client's presence at a Burger King was not innocent. (Id. at 15-

16.) Defendant claims that this question allowed the witness to summarize the other evidence that showed that Defendant was not merely present at the Burger King, but was actually involved in a crime.  By giving the witness that opportunity to expound on the other evidence, Defendant argues his mere presence defense was undermined. (Doc 145-1 at 16.)

As with Defendant's first two claims, the record contradicts Defendant's claim here.  First, several other witnesses testified regarding Defendant's conduct beyond his presence at the Burger King, which evidenced his guilt.  Counsel's question did not elicit any facts that were not established through other testimony and by other witnesses.  For example, Master Trooper Lorenzo Harris testified and described Defendant being stopped in the Ford Escort, Defendant fleeing the scene, and law enforcement officers later finding almost one million dollars in Defendant's vehicle. (Doc 130 at 120-121.)  During direct examination, Lieutenant Jason Dayette described the large amount of money found in the vehicle from which Defendant fled and the cellular telephones seized from Defendant. (Id. at 144-145.)  Captain John Sellers added that while at the Burger King, Defendant did not order any food and instead watched the traffic stop of co-defendant Giles-Morales. (Id. at 174- 176.) Finally, Agent James Scott testified that Defendant walked directly into the stash house without knocking, a stash house filled with drugs and the strong odor of marijuana, and exchanged his F-150 truck for the Ford Escort without hesitation. (Id. 185-188.)  Thus,

17

the evidence of Defendant's guilt was overwhelming and was not only elicited from Agent Bowen.

Second, despite the testimony of the witnesses described above, the Defendant remained free to argue that he was in fact "merely present." Indeed, the Defendant chose to testify and was able to assert his version of events. (Doc 131 at 56-94.) Nothing stopped him from putting forth his version. That version, at least a portion of it, was rejected by the jury, which led to his conviction on two counts.

Additionally, defense counsel's question cannot be shown to be unreasonable under prevailing professional norms. Asking a witness what evidence is present, a fairly typical and standard question, cannot be said to "fall outside the wide range of professionally competent assistance." Chandler at 1314 (internal quotation marks omitted.) But even if the court were to accept Defendant's contention that the question was so open-ended that it led to the admission of testimony that should have been kept out, Defendant is unable to show prejudice as those same facts later came in through admissible evidence.

As reflected in the testimony of Agent Bowen as well as all of the other government witnesses, there was other evidence of the Defendant's guilt besides his presence at the Burger King. The overwhelming evidence of his guilt, to which the Defendant now admits, indicates that even if the "open-ended" question had not been asked, Defendant would still have been convicted.

18

Because of the overwhelming evidence of guilt, the Defendant is hard-pressed to show prejudice.  The court in <u>Sanders v. United States</u>, 2008 WL 345701 (N.D.Ga. Feb. 5, 2008), highlighted such a point under the facts of that case.  In <u>Sanders</u>, the defendant, who was convicted of violating 18 U.S.C. § 922(g), also tried to argue ineffective assistance of counsel through a § 2255 motion, but his claim that his counsel prevented him from testifying at trial was rejected for failing to establish prejudice.  <u>Id.</u> ay *9.  The court noted that in "light of the [the] overwhelming evidence of Movant's guilt, there is no reasonable probability that this case might be one of mistaken identity, as in *Nichols*, or that for any other reason, Movant's exercise of his right to testify would have altered the outcome of the trial."  <u>Id.</u> at *9; <u>see also</u> <u>Green v. United States</u>, 2008 WL 488888, *8 (N.D.Ga. Feb. 19, 2008)(noting that "even if counsel's performance is deemed unreasonable, *overwhelming evidence of guilt will preclude a finding of prejudice.*")(citing <u>Jones v. Campbell</u>, 436 F.3d 1285, 1300 (11th Cir. 2006))(emphasis added).  Here too, any error that might have been committed by defense counsel's open-ended question to agent Bowen did not cause prejudice because of all the other evidence of guilt.

Indeed, the Defendant himself added to the overwhelming evidence and testified in such a manner that proved that he was not merely present.  He admitted that he left the Burger King and agreed to move a car that he believed contained approximately

19

$20,000. (Doc 131 at 63, 67.)  He even admitted that he smelled marijuana when he entered the garage at 4203 Skyler Way.  (Id. at 65.)  Accordingly, he clearly admitted that he engaged in conduct that promoted a drug trafficking scheme, and was not merely present at the scene of the crime.  He might claim that he did not know that his conduct or actions assisted drug traffickers, but he took action nonetheless.

The Defendant has therefore failed to satisfy his burden in showing that his counsel's assistance in this instance went below the professional standards and that, even if it did, he suffered prejudice as a result.  Thus, this third claim must fall.

> **F.  Defendant's Fourth Claim that Counsel was Ineffective because She did not Request that a Juror be Questioned Regarding Juror's Knowledge of Defendant Fails to Satisfy the Strickland prongs**

Defendant's fourth claim is that his counsel should have had a juror questioned when the juror informed the court that he recognized the Defendant.  Defendant claims that had counsel "subjected the juror to voir dire she would have found out that the juror's knowledge of Mr. Martinez impacted the juror's ability to be fair and impartial."  (Doc 145-1 at 17.)  Defendant makes this assertion based on nothing more than speculation.  Defendant does not even attempt to show how this omission on the part of his counsel was unprofessional trial strategy or prejudiced him.  He simply makes a statement without support. Indeed, this fourth claim

consists of only three sentences. (Id.)

Defendant has not satisfied one prong, much less the two prongs of Strickland. He has not shown, based on the exchange with the Court, that another competent lawyer in his counsel's position would not have made the same decision. Based on the transcript, the Court conveyed that the juror seemed to recognize the Defendant because the juror was in the construction business. (Doc 131 at 95.) There was no evidence that the juror knew the Defendant well, had any kind of personal or professional relationship with him, or had any reason to believe the Defendant might be engaging in drug trafficking activity. Based on the exchange that the juror had with the court security officer, which was conveyed to the Court and then to counsel, the juror did not think that his recognition was significant, but felt obliged to bring it to the Court's attention nonetheless. (Id. at 3-95.)

The Court's inclination was to do nothing and both the government and defense counsel agreed. (Id. at 95-96.) Defendant has no argument to show that counsel's decision was unreasonable or was not competent trial strategy. In Frank v. Brookhart, 877 F.2d 671, 674 (8th Cir. 1989), the defendant, through a 18 U.S.C. § 2254 motion, tried to argue that her counsel was ineffective due to his failure to voir dire jurors regarding exposure to news accounts about the search of two missing witnesses. The Eighth Circuit agreed with the district court that defense counsel's decision was a reasonable trial strategy. Id. Here too, there is nothing to

21

indicate that Defendant's counsel decision to not question the juror who recognized the Defendant was not a reasonable trial strategy.

Further, Defendant has made no valid claim that he was prejudiced by this juror's lack of questioning. Defendant has not asserted, for example, that he knew the juror and that he had an exchange or relationship with the juror that would have prevented that juror from being fair and impartial. Indeed, Defendant has not even asserted that he himself recognized the juror. In sum, there is no support for this claim and it must be denied.

> **G.  Defendant's Final Claim that Counsel was Ineffective because She Failed to Move to Suppress the Search of Petitioner's Vehicle is Without Foundation**

In his fifth and last claim, Defendant asserts that his counsel should have moved to suppress the search of Defendant's vehicle and by failing to do so he was prejudiced. (Doc 145-1 at 17-19.) Interestingly, Defendant argues that Fourth Amendment jurisprudence was changing at the time because of Arizona v. Gant, 129 S.Ct. 1710, 1714 (2009), and even though Defendant might have lost his claim on appeal as the law was still evolving, he could have preserved it for appeal and ultimately a writ of certiorari before the Supreme Court. (Doc 145-1 at 18.)

Similar to Defendant's four other claims in his § 2255 motion, Defendant's argument regarding a motion to suppress is unsupported

by the record.  As the Defendant admits, his counsel did move to suppress the traffic stop by claiming that there was no reasonable suspicion for the stop. (See Doc 78.)  Defendant lost that motion, but by raising the issue, his counsel provided professional and competent assistance.  The Court found probable cause for the stop. (Docs 83; 86.)  The evidence of Defendant's participation in drug trafficking was overwhelming leading up to the search of the vehicle, which established probable cause to believe that the car contained contraband.  Under those facts, Defendant cannot meet his burden in showing that his counsel's decision not to move to suppress the search was unreasonable under the circumstances.

Defendant admits that a "warrantless search of an automobile is permitted where there is probable cause to believe that the vehicle contains evidence of a crime."  (Doc 145-1 at 18 citing California v. Acevedo, 500 U.S. 565, 569, 111 S.Ct. 1982, 1986 (1991)), and does not claim that Gant overruled that exception. Yet, he still maintains that the warrantless search of Defendant's car should not have been permitted.  Defendant makes this argument even though the record shows that probable cause to believe that the vehicle contained evidence of a crime existed, as shown the by trial evidence.  The record includes co-defendant Giles-Morales being found with 15 kilograms of cocaine in his vehicle after his vehicle was in the garage of 4203 Skyler Way earlier in the day; Defendant watching the stop and search of co-defendant Giles-Morales from the Burger King; Defendant driving his F-150 truck to

23

a stash house - 4203 Skyler Way; Defendant walking into the stash house without knocking; Defendant driving a vehicle from the stash house that had been in the garage; Defendant fleeing the law enforcement officer when stopped; Defendant listed as a contact in the cellular telephone seized from co-defendant Giles-Morales; and a call to Giles-Morales from a cellular telephone found in Defendant's car.

In United States v. Lindsey, 482 F.3d 1285 (11th Cir. 2007), the Eleventh Circuit noted that "Probable cause . . . exists when under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle." (citation omitted). Based on the evidence in this case, as outlined in the preceding paragraph, there was a fair probability that contraband would be found in Defendant's vehicle.

Defendant has not met his burden on either prong of the Strickland test.  He has failed to show that his counsel's performance fell below professional norms by moving to suppress the stop but not the search of the Defendant's vehicle.  Further, Defendant has not demonstrated how he was prejudiced by this failure, as the record is clear that there was probable cause to stop the vehicle and probable cause to believe that the car contained evidence of a crime.

In sum, Defendant has not shown that his counsel's representation fell below an objective standard of reasonableness and that he suffered prejudice as a result of counsel's actions.

Defendant has failed to meet the high burden required to prove a claim of constitutionally ineffective assistance of counsel. Accordingly, all of Defendant's claims raised against his trial counsel should be denied.

IV.  STATEMENT REGARDING EVIDENTIARY HEARING

An evidentiary hearing is not required in this case. Rule 8(a) of the Rules governing proceedings under 28 U.S.C. § 2255 provides that the district court shall, upon a review of the files, records, and supporting evidence, determine whether an evidentiary hearing is required and/or dispose of the defendant's motion as justice dictates. Rule 8(a), 28 U.S.C. § 2255.

It is well-settled that the district court need not hold an evidentiary hearing every time that a § 2255 claim is raised. "A federal habeas corpus petitioner is entitled to an evidentiary hearing if he alleges facts which, if proven, would entitle him to relief." Futch v. Dugger, 874 F.2d 1483, 1485 (11th Cir. 1989) (citing Townsend v. Sain, 372 U.S. 293, 312 (1963)). However, as noted by the Eleventh Circuit:

> A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record.

United States v. Laetividal-Gonzalez, 939 F.2d 1455, 1465 (11th Cir. 1991)(citation omitted).

In the case at hand, the Defendant does not raise issues that require the introduction of facts from outside the trial record and

the files and records of the Court are adequate to dispose of the Defendant's § 2255 claims.   "A district court need not hold an evidentiary hearing on an ineffective assistance of counsel claim when it can be determined conclusively from the record that counsel was not ineffective." <u>Miller v. United States</u>, ___ F.3d ___, 2004 WL 1206955 at *1 (11th Cir. April 28, 2004).   In this case, an evidentiary hearing is not required to address Defendant's claims for relief under 28 U.S.C. § 2255.

<u>CONCLUSION</u>

For the foregoing reasons, Defendant's 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence should be denied in its entirety.

Respectfully submitted,

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY

SUZETTE A. SMIKLE
ASSISTANT U.S. ATTORNEY
600 U.S. Courthouse
75 Spring Street, SW
Atlanta, Georgia 30303
(404)581-6000
Provisionally admitted to
Georgia Bar per LR 83.1A(3)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

UNITED STATES OF AMERICA          :
                                  :     CRIMINAL ACTION
          v.                      :
                                  :     NO. 1:06-CR-396-TCB-3
OLIVAR MARTINEZ-BLANCO            :
                                  :     CIVIL ACTION
                                  :
                                  :     NO. 1:11-CV-3169-CC

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above was prepared using Courier New 12 point font, and that I have caused a copy of the foregoing GOVERNMENT'S OPPOSITION TO 28 U.S.C. § 2255 MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE to be electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to the following attorney for Defendant:

John Lovell

This 29th day of March, 2011.

SUZETTE A. SMIKLE
ASSISTANT UNITED STATES ATTORNEY

27