IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| **OLIVAR MARTINEZ-BLANCO,** | : | |
| Petitioner, | : | Criminal Action No: |
| | : | 1:06-CR-396 - TCB |
| v. | : | |
| | : | Civil Action No: |
| **UNITED STATES OF AMERICA** | : | 1:11-CV-540-TCB |
| Respondent | : | |

REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S 28 U.S.C. § 2255 MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

COMES NOW, undersigned counsel, on behalf of Olivar Martinez Blanco (also referred to herein as "Petitioner" or "Defendant") and files this Reply to Government's Opposition to Defendant's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence.

**I.    Petitioner's Right To Effective Assistance Of Counsel Was Violated When Counsel Undermined the Strength of the Government's Case Against Petitioner, Inducing Him to Decline the Plea Offer**

The Government asserts that, "[i]f the Court were to accept Defendant's assertions as true – that counsel failed to adequately review discovery with him and did not properly convey the strength of the government's case – Defendant's claim would still fail because he is unable to show actual prejudice and satisfy the second prong of Strickland test." [Doc. 147 at 10]. Defendant asserted that he was offered a twenty-year minimum mandatory plea, but that counsel's conveyance of that

offer effectively amounted to non-conveyance because she undermined the Government's evidence against him. [Doc. 145-1 at 9-13].

As noted in Petitioner's 2255, in order to establish prejudice, Petitioner must establish that "there is a reasonable probability that, but for counsel's errors, he would have pleaded guilty and would not have insisted on going to trial." [*Id*. at 13 (citing *Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995)(quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985))]. Petitioner has made such a showing and, as evidence that he would have taken a plea instead of going to trial, has asserted that, had trial counsel reviewed the discovery materials with him[1] and provided an objective assessment of the Government's case, he would have accepted a plea that involved a mandatory minimum sentence of 20 years as opposed to the mandatory life sentence he faced post-trial.

Contrary to the Government's suggestion, Petitioner never stated that he would be eligible for safety-valve consideration, only that he would not have been exposed to a mandatory life sentence had he accepted the Government's offer. [Doc. 147 at 10].

---

[1] It is critical to remember that Mr. Martinez neither reads nor writes English and that all critical discovery materials in this matter were produced in the English language.  Thus, Mr. Martinez's reliance on counsel was far greater than that of the defendant who actually had the ability to determine for himself the merits of the case against him.  This fact compounds the errors of trial counsel who controlled Mr. Martinez's decision not only via her advice as his only legal counsel but by virtue of the fact that she controlled the information that he received.

Citing one case from the Eastern District of Michigan, *Jackson v. United States*,[2] 248 F.Supp.2d 652 (E.D. Mich. 2003), the Government argues that Petitioner would not have been able to enter a guilty plea because he was unwilling to admit his culpability and, as such, he would not have been able to agree to a factual basis. [*Id*. at 10-12]. In *Jackson*, Petition alleged that counsel failed to convey a plea offer. *Id*. at 655. The Government, in response, provided a declaration of trial counsel that counsel had, in fact, conveyed the plea offer. *Id*. The *Jackson* court did not accept the petitioner's assertions because the court found them inherently incredible. *Id*. at 656. The *Jackson* court, citing no law from any jurisdiction, did find that, even assuming counsel did not convey the offer, the petitioner did not show that he would have accepted the offer because he testified to his innocence at trial. *Id*. at 656-657.

In *Lalani v. United States*, 315 Fed.Appx. 858, 861 (11th Cir. 2009), a panel of the Eleventh Circuit addressed the state of the Sixth Circuit law in this area:

> The Sixth Circuit has specifically addressed whether a petitioner maintaining his innocence prevents him from showing that there was a reasonable probability that he would have pled guilty if informed of the government's plea offer. *Griffin v. United States,* 330 F.3d 733, 738 (6th Cir.2003)[3]. In *Griffin,* the petitioner alleged that his

---

[2] *Jackson v. United States*, for reasons explained below, is not good law in the Eastern District of Michigan, no less the Eleventh Circuit.

[3] *Griffin* was decided on June 4, 2003, after the district court's decision in *Jackson*, which occurred on February 28, 2003. The Eleventh Circuit does not even address the *Jackson* decision as it appears to be invalid even in the Eastern District

3

counsel was ineffective for not informing him of the government's plea offer. *Id.* at 734. The government argued that the record showed that the petitioner would not have pled guilty if he had known about the offer because he maintained his innocence throughout the trial and sentencing. *Id.* at 738. The Sixth Circuit held that the petitioner's "repeated declarations of innocence do not prove, as the government claims, that he would not have accepted a guilty plea." *Id.* (citing *North Carolina v. Alford,* 400 U.S. 25, 33, 91 S.Ct. 160, 165, 27 L.Ed.2d 162 (1970) ("reasons other than the fact that he is guilty may induce a defendant to so plead, ... and he must be permitted to judge for himself in this respect" (quotation omitted))). The court went on to state the following:

> Defendants must claim innocence right up to the point of accepting a guilty plea, or they would lose their ability to make any deal with the government. It does not make sense to say that a defendant must admit guilt prior to accepting a deal on a guilty plea. It therefore does not make sense to say that a defendant's protestations of innocence belie his later claim that he would have accepted a guilty plea. Furthermore, a defendant must be entitled to maintain his innocence throughout trial under the Fifth Amendment. Finally, Griffin could have possibly entered an *Alford* plea even while protesting his innocence. These declarations of innocence are therefore not dispositive on the question of whether Griffin would have accepted the government's plea offer. *Id.*

The *Lalani* panel found the Sixth Circuit reasoning in *Griffin* persuasive and remanded the case to the district court for an evidentiary hearing, stating:

> because the Petitioner's protestations of innocence after their trial do not prevent the Petitioners from showing prejudice, as was held in *Griffin,* there is sufficient

---

of Michigan in light of the more recent *Griffin* decision from the 6th Circuit Court of Appeals.

> subjective evidence in the record to warrant an evidentiary hearing to determine whether there is a reasonable probability that the Petitioners would have accepted a plea offer had their counsel successfully pursued a plea offer from the government.

*Id.* at 861. As such, the government's assertion, relying on *Jackson*, that Petitioner "cannot have it both ways" is unavailing under the law of the Sixth Circuit and, more importantly, under the law of this Circuit. [Doc. 147 at 13].

The Government also asserts that Petitioner's claim must fail because he heard the evidence against him at trial and could have attempted to enter a plea at that point. [*Id.* at 13]. This argument is without merit. As alleged in Petitioner's motion, the plea agreement offered by the Government was offered prior to the § 851 enhancements, raising the minimum mandatory from 10 years to life, being filed. [Doc. 145-1 at 5]. Furthermore, the Government appears to be asserting that counsel need not review the evidence against a defendant with the defendant because a defendant can hear the evidence at trial. However, as this assertion is specious and cannot possibly be the inference the Government intended.

The Government asserts, in a footnote, that Petitioner has failed to "show[] in the record" that any plea offer existed. [Doc. 147 at 14, n.2]. The record, prior to an evidentiary hearing on a 2255 motion, will rarely, if ever, establish that a plea offer was made, much less its terms. This is precisely the reason that an evidentiary hearing is warranted under the facts, as alleged, and the law regarding when a

5

hearing is necessary. However, it is well known in this district that the standard offer for a person in Mr. Martinez's situation is for the Government to file only one qualifying conviction under 21 U.S.C. § 851.[4]

Additionally, the Government has asserted that it is entirely Mr. Martinez's fault that he did not enter a plea. This is simply not true. Undersigned appellate counsel explained to Mr. Martinez, for the first time, how conspiracy law operates and that although he never touched drugs, he can be found guilty of a drug conspiracy. Prior to trial and at trial, Mr. Martinez was not aware of how conspiracy law operates. Mr. Martinez's understanding at trial is supported by the record where trial counsel stated her belief that Mr. Martinez was mischarged and, at worst, was only guilty of money laundering, a crime not charged in the indictment. [Doc # 129, p. 6, 7 ("I think they mistakenly did not indict him for

---

[4] Indeed, the Court may have direct knowledge that such a plea was offered in this case. Undersigned counsel is under the impression that the Court expressed concern prior to the time of the sentencing hearing that the Court would have to impose a sentence that the Court eventually described as "savage, cruel and unusual." (Doc. 133: 11-12). It is the belief of counsel that the Court inquired into these issues prior to the sentencing hearing and likely was notified of the plea offer. Though well aware that such an offer is standard, undersigned counsel confirmed with trial counsel for both the Government and the Defendant prior to filing the initial petition that such an offer was conveyed.

Furthermore, it is all the more certain that the Government would make such an offer where, as here, both predicate convictions used for the § 851 enhancements were *entered on the same day*, both were for *relatively minor offenses*, and the Defendant was indisputably a *mule* in the current case. (PSR ¶¶ 18, 39-40).

money laundering, which might have been better for them, but they didn't"); Doc # 130, p. 60; Doc # 131, pp. 70-71]. With the proper explanation of the facts and law that Mr. Martinez had finally received, he is willing to enter a guilty plea.

Finally, assuming that Mr. Martinez would not acquiesce to a factual basis, the Government concludes that a plea could not be accepted. The Government states that the acknowledging of a factual basis "would have been a requirement for [Mr. Martinez] . . . to enter a guilty plea." [Doc. 147 at 12]. This is simply not true. The Government is either ignorant of or ignores the fact that the Court may accept a plea without a defendant acknowledging guilt pursuant to the seminal case of *North Carolina v. Alford*, 400 U.S. 25 (1970).

The law is clear that the district court "shall" hold an evidentiary hearing on a habeas petition "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Petitioner has alleged that he would have accepted the plea and this assertion, if true, entitles him to relief under *Coulter*. As such, Petitioner has met his burden for a hearing in order for this Court to receive evidence regarding why the Petitioner would have accepted responsibility for his actions regardless of his trial testimony. *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989)("A federal habeas corpus petitioner is entitled to an evidentiary hearing if he alleges fact which, if proven, would entitle him to relief"."). Even in the Sixth Circuit, where

the *Jackson* case originated, a hearing on the issue of whether petitioner would have accepted a plea offer, even where the Petitioner testified at trial, provides facts relevant for determining whether the offer would have been accepted. *Humphress v. United States*, 398 F.3d 855, 859 (6th Cir. 2005).

## II. Petitioner's Right to Effective Assistance of Counsel was Violated When Counsel Failed to Challenge the Government's Admission of Expert Testimony That Vitiated Any Mere Presence Defense

The Government asserts that Petitioner has failed to establish the first prong of *Strickland* by failing to "show that other competent counsel would have objected specifically to the testimony regarding presence." [Doc. 147 at 15]. In *United States v. Miranda*, 425 F.3d 953, 962 (11th Cir. 2005)(District Court Case No 1:02-cr-586, Doc. Nos. 570, 686), the district court issued an order, granting the defense motion, "that Special Agent Cromer should be instructed not to testify that in his expert opinion drug traffickers do not tolerate anyone being present in a stash house who is not involved in the conspiracy." This establishes that (1) other competent counsel have recognized this issue and (2) that, contrary to the Government's position, such an objection may have been sustained. [Doc. 147 at 15]. Furthermore, "the trial judge has 'considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" *United States v. Scott*, 2010 WL 4627876, 5 (11th Cir. 2010)(quoting *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 1176, 143

L.Ed.2d 238 (1999)). However, the district court's exercise of this wide discretion does not arise where counsel fails to challenge admission of the testimony.

Agent Noe testified, in pertinent part, that only trusted members of an organization know where stash houses are located, only a small number of people in Drug Trafficking Organizations (DTO) know where the stash houses are located, and only trusted members of the DTO have knowledge of stash house locations. [Doc #131, pp. 22-24]. This testimony gave context to the Government's position regarding why Mr. Martinez entered the stash house at all, much less without knocking. Petitioner maintains that this was damaging evidence and that Agent's Noe's testimony vitiated his mere presence defense and counsel was ineffective for failing to seek its exclusion, particularly after counsel had falsely represented to Mr. Martinez that the Government was lacking the evidence necessary to convict.[5] Vitiating any mere presence defense, despite any other evidence, is precisely the reason the evidence was excluded in *Miranda*. Specifically, in granting the defense motion to exclude, the court stated, "Agent Cromer's testimony ... that they won't let people be present if they are not part of the organization, would tend to permit the jury to leap over what I understand to be the law in this Circuit, and that is that mere presence is not sufficient for a

---

[5] The Government correctly categorizes the evidence against Mr. Martinez as "overwhelming" throughout its response—using the word "overwhelming" no fewer than ten times. (Doc. 147). It is remarkable that trial counsel did not reach the same conclusion with the entirety of a man's life hanging in the balance!

9

conviction . . . ." *United States v. Miranda*, 220 Fed.Appx. 965, 969, 2007 WL 869043, *4 (11th Cir. 2007).

In Petitioner's case, counsel's defense was mere presence. [Doc. # 130, pp. 61-62 ("The Judge is going to tell you that a defendant's mere presence at the scene of a crime does not make him guilty. My client was merely present.")]. The Government asserts that, even if counsel was ineffective, there was no "prejudice based in the overwhelming evidence[6] of defendant's guilt regardless of the expert's testimony." [Doc. 147 at 15]. The most damaging evidence against Petition was that he arrived at a stash house where 930 pounds of marijuana, over 16 pounds of methamphetamine, 2 kilograms of cocaine, handguns, and a machine gun were located, entered without knocking, left in a different vehicle than he had arrived in, and the vehicle he departed in contained $834,000. Counsel's failure to request exclusion of Agent Noe's testimony constitutes ineffective assistance of counsel and Petitioner was prejudiced by the error because the testimony vitiated his mere presence defense. Again, this is particularly crucial where, as here, the Defendant

---

[6] The Government's reliance on *United States v. Thompson*, 2011 WL 98548, *3 (S.D.Ala. Jan. 11, 2011), is unavailing. [Doc. 147 at 15-16]. *Thomas* did not involve exclusion of expert testimony; rather, it concerned a statement made by a prosecutor during closing argument. The full quote referenced by the Government is "[a]ny claim of prejudice based on this single statement would be frivolous in light of the overwhelming evidence of Petitioner's guilt." *Id*. at *6.

does not speak or read English and relied on counsel's interpretation of evidence and advice.

**III.  Petitioner's Right to Effective Assistance of Counsel was Violated when Counsel Asked, on Cross Examination, an Open-Ended Question that Led to the Admission of Testimony that Vitiated the Mere Presence Defense**

Petitioner urged that his mere presence defense was further gutted by counsel's disastrous cross examination of Agent Bowen, during which counsel asked an open-ended question that permitted Agent Bowen to summarize the government's evidence, including, but not limited to, the government's position that Petitioner's access to the stash house indicated his involvement in the drug conspiracy. [Doc. 145-1 at 15-16]. In response, the Government asserts, "Counsel's question did not elicit any facts that were not established through other testimony and by other witnesses." [Doc. 147 at 17]. However, other than the testimony of Agent Scott, the Government does not address any testimony regarding Petitioner's presence at the stash house and Agent Scott, unlike Agents Noe and Bowen, did not testify, in any manner, about what inferences may be drawn about Mr. Martinez's involvement in the conspiracy from being in the stash house . In particular, the Government discusses the testimony of Master Trooper Lorenzo Harris, describing Mr. Martinez's conduct after his vehicle was stopped, Lieutenant Hason Dayette's testimony about the evidence recovered from the vehicle, and Captain John Sellers testimony regarding Mr. Martinez's actions

while he was at the Burger King. [Doc. 147 at 17]. None of this evidence has any bearing on the testimony regarding stash houses and the Government's theory as to their relevance to drug conspiracy participation

The question is not whether Petitioner was still able to argue whether or not he was merely present, but whether counsel's action or inaction undermined the argument to the point where it was meaningless and, therefore, prejudicial.

The Government's asserts that the norm is "asking a witness what evidence is present, a fairly typical and standard question." [Doc. 147 at 18]. This may be the type of question typical of the Government during the direct examination of their agent witnesses. However, defense counsel, when they have government witnesses on cross examination, do not tend to ask witnesses open-ended questions permitting them to summarize the Government's case. It is either a poor reflection on the local bar or a disingenuous statement for the Government to assert otherwise. Rather, defense counsel should ask leading questions that are likely to be answered with a yes or no before any explanation can be given.

Indeed, two most critical rules of cross examination are: 1) Always ask leading questions, and 2) Don't ask a question to which you do not know the answer. Here, trial counsel clearly asked a non-leading, open-ended question which reflects either ignorance of the basic tenets of cross examination or a troubling unfamiliarity with the Government's evidence. Either counsel did not

consider the consequences of asking such an ill-advised question or simply did not spend the time reviewing the discovery necessary to lead any reasonable attorney to know that Agent Bowen's answer would like be devastating—the proverbial lay-up, the soft-toss pitch that Bowen slammed out of the park!

In this argument the Government also cites cases for the proposition that overwhelming evidence of guilt means there can be no prejudice, without a single case addressing the issue raised by Petitioner: counsel's ineffective cross-examination. [Doc. 147 at 19]. However, as noted above, the most damaging evidence against Petitioner related to his conduct at the stash house and the testimony that he had to be involved in the drug conspiracy to be there gutted any mere presence defense.

The Government further asserts that Petitioner could not have been prejudiced because he testified that he was not just merely present. [Doc. 147 at 19-20]. This assertion mischaracterizes Petitioner's testimony. Petitioner clearly asserted that he was not involved in the drug conspiracy and that he went to the house to move a car. The fact that he smelled marijuana in the residence is irrelevant. The question is whether the testimony of Agents Noe and Bowen indicated to the jury that Petitioner would not have been permitted in the stash house at all but for his intimate involvement with the drug conspiracy in a manner that vitiated his mere presence defense. Petitioner continues to assert that counsel

was ineffective for eliciting this testimony and that Petitioner was prejudiced by the gutting of his mere presence defense.

The real travesty here is that a person who spoke no English entrusted himself to the counsel and care of his attorney. That attorney assured Mr. Martinez that the Government had no case and that if they did, it was for an uncharged crime. Then, after Mr. Martinez placed his complete faith and trust in his attorney, his attorney demonstrated both a lack of knowledge of the Government's case and the mechanics of a conspiracy case. Furthermore, after providing such poor advice, trial counsel failed to properly to present any legitimate defense.

**IV. Petitioner's Right to Effective Assistance of Counsel was Violated when Counsel Failed to Request that a Juror who Indicated He Knew Mr. Martinez be Questioned Regarding His Knowledge**

The Government's response to Petitioner's argument highlights the merits of Petitioner's argument – there was no evidence regarding the impact of the juror's recognition of Mr. Martinez because counsel failed to request that the juror be *voir dired*.

The Government offers *Frank v. Brookhart*, 877 F.2d 671 (8th Cir. 1989), for the proposition that defense counsel's failure to *voir dire* the jury is reasonable trial strategy. [Doc. 147 at 21-22]. In *Brookart*, the defense attorney *testified at a hearing* that he "believed that *voir dire* would accomplish nothing" and believed that conducting *voir dire* on pretrial publicity might actually harmfully affect the

14

defendant by removing a potentially viable ground for the appeal because Iowa law holds that publication of an article, in some situation, may justify an inference of prejudice . *Id.* at 674(citation omitted).

Unlike *Brookhart*, Petitioner's case does not involve publicity, rather a juror's actual knowledge of and potential prejudice to the defendant. Additionally, there has been no such testimony by counsel in this case that could form a basis for the position that her failure to *voir dire* the juror was strategic either for trial purposes or to preserve a potential appellate issue. In fact, like *Brookhart*, a hearing is needed to determine whether trial counsel will assert that this was strategy.

### V. Petitioner's Right to Effective Assistance of Counsel was Violated when Counsel failed to Move to Suppress the Search of Petitioner's Vehicle

The Government appears to assert that, because counsel challenged the stop itself, Petitioner's argument is without merit. [Doc. 147 at 22-23]. There is no dispute, however, that counsel did not challenge the search of the vehicle. As such, the Government's assertion that the search was supported by probable cause is merely their position as this matter was never litigated. [Doc. 147 at 23-24]. As such, the basis for the stop of Petitioner's vehicle remains in question and, under *Arizona v. Gant*, 129 S.Ct. 1710 (2009), the vehicle could not have been searched incident to his arrest without a warrant once he was removed from the vehicle unless "it is reasonable to believe the vehicle contains evidence of the *offense of*

*arrest.*" *Id.* at 1723 (emphasis supplied). As noted by Petitioner's opening brief, based on the timing of the filing of *Gant*, this issue was viable during the time for filing a Motion to Suppress in Petitioner's case. [Doc 145-1 at 18-19].

Petitioner has established that counsel's failure to raise this issue amounts to ineffective assistance because counsel should have been aware of the state of Fourth Amendment jurisprudence during Petitioner's case. Petitioner has shown prejudice because (1) the fruits of the search of his vehicle could have been suppressed and (2) even if denied, a record would have been made for purposes appellate review.

## VI. Statement Regarding Evidentiary Hearing

The district court "shall" hold an evidentiary hearing on a habeas petition "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). As addressed in Petitioner's opening brief and herein, Petitioner has alleged "fact[s] which, if proven, would entitle him to relief" and is, therefore entitled to a hearing. *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989).

**WHEREFORE**, Mr. Martinez respectfully requests that this Court:

1) Permit him to amend this pleading;

2) Grant leave for the parties to conduct discovery concerning the claims presented;

3) Conduct and evidentiary hearing on the claims presented and permit the pleadings to conform to the evidence;

4) Permit the parties to brief and argue the claims presented after an evidentiary hearing;

5) Vacate, set aside or correct his conviction and sentence; and

6) grant such other, further and/or alternative relief as law and justice require.

Dated: this 13th day of April, 2011.

                                              Respectfully Submitted,

                                              /s/ *John Lovell*
                                              John Lovell
                                              Attorney for the Defendant
                                              GA Bar # 359390
                                              90F Glenda Trace, #427
                                              Newnan, Georgia 30265
                                              678.552.2534 (voice)
                                              404.760-1136 (facsimile)

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was formatted in New Times Roman 14 pt., in accordance with Local Rule 5.1B, and I have this day electronically filed the document with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to the attorney(s) of record in the case, including opposing counsel, Suzette A. Smikle.

This 13th day of April, 2011.

/s/ *John Lovell*
John Lovell
Attorney for the Defendant
GA Bar # 359390
90F Glenda Trace, #427
Newnan, Georgia 30265
678.552.2534 (voice)
404.760-1136 (facsimile)